UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON BONDS,                          )
1407 5th Street, NW                    )
Washington, DC  20001                  )
202-462-2280                           )       **93 2420**
                   Plaintiff,          )
                                       )
     vs.                               )       Civil Action No.
                                       )
DISTRICT OF COLUMBIA                   )        LAMBERTH, J. RCL
serve: Mayor Sharon Pratt Kelly,       )
441 Fourth Street, N.W.                )
Suite 1100, Washington, DC  20001;     )        FILED
                                       )
                   Defendant.          )       NOV 2 4 1993
_____)
                                               CLERK, U.S. DISTRICT COURT
                                               DISTRICT OF COLUMBIA

**COMPLAINT**

(For Declaratory, Equitable and Monetary Relief)

### Introduction

1.  Plaintiff Sharon Bonds brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1871, 42 U.S.C. § 1983 for redress of injuries she suffered due to a pattern and practice of employment discrimination consisting of sexual advances, harassment, and intimidation by Defendant's Chief of Records culminating in her constructive discharge. Accordingly, Bonds seeks declaratory, equitable and monetary relief.

### JURISDICTION

2.  This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Accordingly,

jurisdiction over this action is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f).

## VENUE

3.   This action properly lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) as the claims presented arose, and the unlawful employment practices complained of occurred, within this judicial district.

## PARTIES

4.   Plaintiff Sharon Bonds is a female who resides in the District of Columbia.

5.   Defendant, the District of Columbia, is a municipal corporation.  It is subject to suit under D.C. Code § 1-1201, et seq.  The Department of Corrections ("Department") is an agency of the District of Columbia, created by D.C. Code § 24-441, and operated pursuant to D.C. Code § 24-442.  Edward Paylor is, and at all times relevant to this complaint was, employed by the District of Columbia as the Chief of the Records Division in the Central Detention Facility of the Department.  As such, his actions bind the District of Columbia.

## ADMINISTRATIVE PROCEEDINGS

6.   On January 26, 1990 Sharon Bonds timely filed a complaint with the D.C. Office of Human Rights alleging employment discrimination on the basis of sex.  The complaint was

jointly filed with the EEOC.

7. Bonds received a notice of her right to sue from the EEOC on August 26, 1993.

8. Bonds has exhausted all administrative remedies prerequisite to filing suit.

## FACTS

9. Sharon Bonds was hired by the District of Columbia Department of Corrections on or about October 15, 1984 as a correctional officer. She resigned on August 14, 1989.

10. From her date of hire until approximately February 1, 1989 Bonds served as a correctional officer in the cell blocks in the Central Detention Facility ("CDF").

11. From the beginning of February through March 31, 1989 Bonds worked in the Records Office at the CDF under the direct supervision of Edward Paylor.

12. On April 1, 1989 Paylor ordered her transferred back to the cell blocks at CDF.

13. Bonds was hired at grade DS-6, and in October 1985, upon satisfactory completion of her probationary year, she was promoted. In 1986 and 1987 she received step increases within her grade. Throughout her tenure Bonds consistently received fully satisfactory ratings of her job performance, and at times received a rating of "excellent."

14. During Bonds' assignment to the Records Office, Paylor had authority over the terms and conditions of her

3

employment and had authority to alter her employment status.

15.  Even before her assignment to the Records Office, Bonds was subjected to sexual harassment.  In the summer of 1985 Bonds was slapped on the buttocks by Lieutenant Jones, who was her supervisor at that time.

16.  Immediately thereafter, Bonds filed a complaint with the Department challenging this conduct.  No corrective action was ever taken in response to the complaint.  Soon after the complaint was filed, Lieutenant Jones was transferred to Lorton where he was promoted to Captain.

17.  Two weeks after Jones was promoted, he learned that Bonds had a brother who was employed in Lorton, the same facility to which Jones had been transferred.  Jones summoned Bonds' brother to his office and terminated him, informing him that the discharge was because he was the brother of the woman who had caused him trouble.

18.  Then, beginning in late 1988, before Bonds was assigned to the Records Office, Edward Paylor regularly commented on her personal appearance, and asked her for dates.  She always refused these overtures.

19.  On one of these occasions Paylor told Bonds that if she went out with him he would ensure that she was promoted by the end of that year.  She declined and asked him to leave her alone.  Paylor told her that he was Chief of Records, and could help her if she needed anything.

20.  Shortly thereafter, in early 1989, Paylor told

Bonds that he had arranged for her transfer to his office, and said their proximity would increase the opportunities for dates between them. Bonds stated that she was not interested in dating Paylor.

21. On her first day in the Records Office, in early February 1989, Paylor asked Bonds to lunch. She refused his overture.

22. During this same conversation Paylor told Bonds that she was not required to wear her uniform to work. Department rules entrusted to Paylor the discretion to determine the attire of employees working for him.

23. On the same day Paylor asked Bonds for dates. She refused his overtures. He then asked her to have dinner at his home. Again she rejected his advances.

24. On multiple occasions during the same month, February 1989, Paylor made unwanted, intimate comments to Bonds about her personal appearance, told her that her clothes fit her body well, and stared at her chest.

25. Despite Bonds' unequivocal rejection of Paylor's unwelcome sexual advances, he continued to make such offers. She even told Paylor that she had a boyfriend who worked at the jail, hoping to discourage his overtures.

26. On multiple occasions during her tenure in the Records Office Paylor summoned Bonds to his office. Then, after directing her to close the door, he again commented on her appearance, asked her to date him, and told her he wanted to help

her.

27. During the same period Paylor made sexual comments to Bonds over the telephone. He commented on her attire and appearance, suggesting that a particular outfit should be worn on a social date with him, stating that he liked the way her legs looked, and telling her that he really wanted to see how she dressed after work hours.

28. On one occasion Paylor made similar unwelcome remarks about Bonds' appearance. She told him that she objected to his comments about her clothes and body, and hung up the telephone. Immediately thereafter, Paylor confronted Bonds at her desk, revoked his authorization for her to wear street clothes, and sent her home to change into a uniform. While Bonds was thereafter required to wear her uniform, Paylor allowed most employees in the Records Office to wear ordinary street clothes.

29. On that same day, Paylor warned Bonds that Department custom required that if she wanted a promotion she would have to engage in sexual relations with her supervisor. Bonds again refused to have sexual relations with him.

30. Shortly thereafter, Paylor pressed Bonds to explain why she would not accede to his unwelcome sexual advances. When she continued to refuse his overtures, Paylor threatened that she would never receive a promotion. Concerned that her career would be thwarted, Bonds asked Paylor what he meant by "going on a date" with him. Paylor leered at her and said that she should "let [her] mind wander." In response, Bonds

emphatically refused Paylor's overtures.

31. After this conversation, Bonds went home and cried.

32. Although Bonds had earlier complained about these incidents to co-workers, after this last exchange she reported these conversations to a union shop steward. At about the same time, Bonds filed an internal grievance with the Department, complaining of the extensive harassment to which Paylor had subjected her.

33. Shortly after Bonds' complaint to the shop steward, on or about February 23, 1989 Paylor threatened Bonds by saying, "I'll get what I want or else."

34. After Bonds informed co-workers of Paylor's threat, Paylor became orally abusive toward Bonds. He called her a troublemaker and on more than one occasion he screamed at her for placing him on hold on the telephone or not getting to his telephone call quickly enough. Paylor treated employees who acceded to his overtures in a civil manner.

35. On another occasion Paylor threatened Bonds that her rejection of his sexual overtures would cause her to risk demotion.

36. On or around March 6, 1989 Bonds needed to attend a medical appointment for a prior, work related injury. Because the appointment was during her usual working hours she needed Paylor's permission to attend. While other similarly situated employees were readily allowed leave for such appointments,

Paylor conditioned Bonds' right to such leave on her acceding to his sexual overtures. Since Bonds refused these overtures, Paylor denied her the leave she sought. Bonds was denied needed physical therapy.

37. Shortly thereafter, Paylor had Bonds placed on Absent Without Official Leave status ("AWOL"), when she had been ill and had submitted to the Department letters from her physician documenting her illness.

38. Therefore, throughout the entire period that Bonds worked in the Records Office under the supervision of Paylor, she was subjected to sexual advances on nearly a daily basis which she consistently showed to be unwelcome.

39. Throughout her assignment to the Records office, Bonds never acceded to Paylor's advances.

40. On April 1, 1989, Paylor ordered Bonds transferred to an undesirable post, back on the cell blocks, and told her the transfer was because she had been unreceptive to his sexual overtures.

41. Bonds never received a promotion after her assignment to the Records Office.

42. Women who acceded to Paylor's sexual demands received promotions and other job benefits.

43. Even after Bonds had been transferred to the cell block and no longer was directly supervised by Paylor, he warned her that he could have her involuntarily transferred back to his office any time he wished.

44. For more than two months following Bonds' transfer out of the Records Office, Paylor made sexual demands of Bonds several times each week and urged her to return to his supervision, making statements such as, "Are you tired yet?" or "Had enough yet?"

45. During June and July 1989 Bonds was on sick leave due to an injury. Rather than return to work and face the continuous harassment from Paylor she had encountered before her leave, she was forced to resign on August 14, 1989.

46. Through the course of conduct described above, Paylor made working conditions intolerable for Bonds.

47. Through the course of conduct described above, the defendant District of Columbia created and tolerated abusive and discriminatory working conditions sufficient to drive a reasonable person to leave her employment.

48. Through the course of conduct described above, the defendant constructively discharged Bonds.

49. Paylor's daily harassment of Bonds during her tenure in the Records Office, his constant sexual advances even after he no longer directly supervised Bonds, and his suggestions that such incidents would recur as long as she remained at the Department caused her extreme emotional distress, great anxiety, and fear.

50. At all times relevant to this action, Paylor acted within the scope of his employment in his capacity as agent of the Department and the District of Columbia.

51. Defendant had notice and knowledge of prior instances of similar conduct by Edward Paylor and other Department supervisors toward female employees of the Department of Corrections, both prior and subsequent to the incidents described in this complaint. Defendant failed to take adequate remedial action to prevent the recurrence of such conduct and its resulting harm to Bonds.

52. Bonds filed a timely complaint with the DC Office of Human Rights on January 26, 1990. The complaint was simultaneously filed with the EEOC.

53. Bonds received notice of her right to sue on August 26, 1993.

### COUNT I--VIOLATION OF TITLE VII

(sexual harassment--quid pro quo)

54. Plaintiff Bonds realleges and incorporates by reference Paragraphs 1 through 53 of this Complaint.

55. Paylor regularly made to Bonds advances that were sexual in nature and which Bonds regarded as and showed to be unwelcome.

56. The unwelcome sexual advances made by Paylor to Bonds constitute sexual harassment in violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

57. Paylor was acting within the scope of his

employment when he sexually harassed Bonds.

58. The defendant had actual and constructive knowledge of the sexual harassment perpetrated against Bonds and refused to take remedial action of any kind.

59. The Defendant's discriminatory practices described above have caused Bonds harm, including severe emotional distress.

60. Accordingly, the defendant violated Bonds' rights protected by § 703 of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT II--VIOLATION OF TITLE VII

(sexual harassment--hostile environment)

61. Plaintiff Bonds realleges and incorporates by reference Paragraphs 1 through 53 of this Complaint.

62. Paylor's comments to Bonds were unwelcome.

63. Paylor's comments to Bonds were based on sex.

64. Paylor's comments to Bonds were sufficiently severe and pervasive to alter the terms, conditions and privileges of her employment, and to create an abusive, intimidating, hostile and offensive working environment.

65. Paylor's conduct constitutes sexual harassment and discrimination based on sex in violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

66. Paylor was acting within the scope of his employment with Defendant when he engaged in harassment of and

11

discrimination against Bonds.

67. Paylor's harassment of and discrimination against Bonds took place in the workplace during working hours. Paylor had authority, delegated by the District, over the conditions of Bonds' employment.

68. The Defendant had actual and constructive knowledge of Paylor's harassment of and discrimination against Bonds and others, and failed to take remedial action of any kind whatsoever.

69. The Defendant's discriminatory practices described above have caused Bonds harm, including severe emotional distress.

70. The Defendant is liable to Bonds for violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

## COUNT III--§ 1983

(violation of equal protection/5th amendment)

71. Bonds realleges and incorporates by reference Paragraphs 1 through 53 of this complaint.

72. Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

73. At all times relevant to this complaint, Paylor and the Department were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

74.  Defendant District of Columbia, through its agent Edward Paylor made unwelcome sexual advances and unwelcome sexual comments to Bonds, both based upon her sex, conditioned Bonds' receipt of job benefits on her acquiescence to those sexual advances, and required Bonds to work in a hostile and abusive environment.

75.  Defendant's conduct constitutes sex discrimination in violation of Bonds' right under the Fifth Amendment to the United States Constitution to equal protection of the laws.

76.  Defendant had notice and knowledge of prior instances of similar conduct by Edward Paylor and other Department supervisors toward female employees of the Department of Corrections, before the deprivation of Bonds' rights described in this complaint.  Defendant failed to take adequate remedial action to prevent the recurrence of such conduct and its resulting harm to Bonds.

77.  Defendant implicitly or explicitly, with intent and knowledge of the foreseeable consequences to Bonds, condoned, authorized or ratified the conduct of Paylor, promoted or permitted a working environment where such conduct was tolerated, condoned or encouraged, and violated its own purported policies governing sexual harassment in the workplace.  Such actions were taken by or with the knowledge of the Director of the Department.  Sex discrimination through sexual harassment is the custom, usage and unwritten policy of the Department.

78.  Defendant, acting under color of state law,

violated the federally protected rights of Bonds in violation of 42 U.S.C. § 1983.

### REQUEST FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court grant the following relief against Defendant District of Columbia:

1. Declare the discriminatory conduct at the Department of Corrections unlawful.

2. An injunction enjoining the District of Columbia from engaging in any employment practice that discriminates on the basis of sex in the Department of Corrections.

3. An award of compensatory damages for plaintiff's past and future pain and suffering and loss of enjoyment of life in an amount appropriate to proof at trial.

4. An award of reasonable attorney's fees and costs.

5. An award of such other just and equitable relief as this court deems fit.

### Demand for Jury Trial

Plaintiff demands trial by jury on all counts of the complaint.

Respectfully Submitted,

*Joseph M. Sellers* (signature)

Joseph M. Sellers (Bar No. 318410)
Avis E. Buchanan (Bar No. 365208)
Warren K. Kaplan (Bar No. 034470)
Christine E. Webber (Bar No. 439368)
Washington Lawyers Committee for
Civil Rights and Urban Affairs
1400 Eye Street, N.W.
Suite 450
Washington, DC  20005
202-682-5900

Counsel for Plaintiff

Dated:    November 24, 1993

15