UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BESSYE NEAL, <u>et</u> <u>al.</u>,            )
                                            )
    Plaintiffs,                         )
                                            )
    v.                                  )     Civil Action No. 93-2420
                                            )           (RCL)
MARGARET MOORE, Acting                      )
Director, D.C. Department                   )
of Corrections, <u>et</u> <u>al.</u>,       )
                                            )
    Defendants.                         )
——————————————————————————————————————     )

**FILED**

DEC 2 3 1994

Clerk, U.S. District Court
District of Columbia

<u>**MEMORANDUM OPINION**</u>

    This case comes before the court on plaintiffs' motion for class certification. After considering the arguments and authorities presented by counsel in their briefs and oral argument, and for the reasons more fully set forth below, the court hereby GRANTS plaintiffs' motion for class certification and adopts the class definition proffered therein. The court further ORDERS that this litigation be bifurcated into separate proceedings -- the first to address liability; the second to address appropriate remedial relief if the defendants are in fact held liable.

    To the extent that plaintiffs seek relief in the form of a broad affirmative action program benefiting all female employees, such relief may not be obtained in this lawsuit. Plaintiffs' class is certified to seek affirmative action relief only for those employees actually affected by defendants' alleged policy of sexual harassment and retaliation.

1



## I.  BACKGROUND

This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Plaintiffs are current and former female employees of the Department of Corrections, and a former male employee.  They allege injuries due to a pattern and practice of sexual harassment committed by the Department against its current and former female employees, and a pattern and practice of retaliation against current and former male and female employees who oppose or complain of sexual harassment.

The Department of Corrections administers nine detention facilities located in the District of Columbia and in Lorton, Virginia, and employs over 4000 persons, approximately 1500 of whom are female.  All of the facilities and their employees are under the supervision of the Director, who was Walter B. Ridley at the time this case was filed, but who has since been succeeded by Margaret A. Moore.

Plaintiffs contend that the Department is culpable with respect to four categories of unlawful behavior:  (1) Quid pro quo sexual harassment.  Supervisors have demanded that female employees submit to sexual advances as a condition of job benefits or to avoid adverse job actions.  (2) Sexual favoritism.  Supervisors favor women who accede to sexual overtures by offering them job benefits and opportunities, to the detriment of women who reject those overtures.  (3) Hostile environment.  Supervisors and co-workers regularly engage in offensive conduct of a sexual nature

and women are treated less favorably than comparably situated men. (4) Retaliation. Employees who complain about the hostile environment, or aid and abet complaints of sexual harassment made by others, are treated less favorably than they would otherwise have been treated.

These assorted infractions would violate §§ 703 and 704(a) of Title VII, as well as the equal protection component of the due process clause of the Fifth Amendment, enforceable under 42 U.S.C. § 1983. Department supervisors allegedly acted within the scope of their duties when they sexually harassed female employees, created a hostile work environment and retaliated against employees who supported harassment charges. Plaintiffs argue that the Department had actual and constructive notice of these impermissible supervisory acts and refused to take remedial action. In effect, the Department condoned, authorized or ratified the conduct of their agents, thus establishing an unwritten policy of sexual harassment and retaliation.

Plaintiffs claim severe emotional distress and loss of wages. They seek back pay, other job benefits, and compensatory damages to redress their injuries. In addition, plaintiffs seek a declaration that unlawful practices exist at the Department of Corrections, a permanent injunction prohibiting the Department and its agents from perpetuating these practices, and a mandate that the Department conform with Title VII and implement an effective affirmative action program. Lastly, plaintiffs ask for attorneys' fees and costs.

## II.  CLASSES PROPOSED BY THE PARTIES

In their motion for class certification, plaintiffs propose that the class consist of two groups of employees:  (a) All current and former female employees who have been employed by the Department of Corrections between April 1, 1989 and date of trial, and who were adversely affected by the practices of sexual harassment.  (b) All current and former male and female employees who have been employed by the Department between April 4, 1991 and date of trial, and who have suffered retaliation for opposing such unlawful employment practices.

Defendants argue that any need for broad injunctive relief can be addressed at trial without certification of a class. Alternatively, they propose the following two subclasses:  (1) All female employees of the Department in non-supervisory roles at time of trial, with respect to the claim that defendants have tolerated a centralized policy of sexual harassment entitling such employees to injunctive relief under Title VII and 42 U.S.C. § 1983.  (2) All employees of the Department at time of trial who have filed complaints of sexual harassment or assisted others in doing so, with respect to the claim that defendants have tolerated a centralized policy of retaliation against such employees entitling them to injunctive relief under Title VII.

In Bailey v. Patterson, 323 F.2d 201, 206 (5th Cir. 1963), cert. denied, 376 U.S. 910 (1964), the court held that class certification was not necessary because the individual and the class would be entitled to the same decree.  Defendants cite Bailey

4

and, in this circuit, <u>Bundy v. Jackson</u>, 641 F.2d 934, 947-48 (D.C. Cir. 1981), for the proposition that broad relief is available in individual Title VII actions.    Moreover, if there were common issues of law or fact -- as required for class certification -- they would support collateral estoppel in individual actions by members of the proposed plaintiff class against the Department of Corrections.    See <u>Restatement (Second) of Judgments</u> § 29 (1980).

Even if defendants are correct, repeated invocations of collateral estoppel consume judicial resources.    Furthermore, several courts have questioned whether injunctive relief may be liberally structured to benefit non-parties.    See, <u>e.g.</u>, <u>Brown v. Trustees of Boston Univ.</u>, 891 F.2d 337, 361 (1st Cir. 1989); <u>Zapeda v. United States Immigration and Naturalization Service</u>, 753 F.2d 719, 728 n.1 (9th Cir. 1983).    While some courts have been willing to grant broad injunctive remedies to individual claimants (<u>see</u>, <u>e.g.</u>, <u>Bowe v. Colgate-Palmolive Co.</u>, 416 F.2d 711, 719 (7th Cir. 1969)), other courts have refused to do so.    See, <u>e.g.</u>, <u>Gregory v. Litton Systems, Inc.</u>, 472 F.2d 631, 633-34 (9th Cir. 1972).    The dilemma is twofold: first, plaintiffs in an individual action are under no obligation to represent the views of others; second, only injunctive relief can remedy the systemic aspects of sexual harassment that Title VII was meant to address.

The individualized nature of monetary relief and the prospect of equitable relief directing restoration of lost job benefits suggest that a general prohibitory injunction may not meet the needs of absent class members.    An important question is "whether

defendants would conform their conduct in response to a single, non-class action judgment against them, or whether other similarly situated plaintiffs would have to bring independent actions. . . . If the latter scenario is more probable, then this Court should certify a plaintiff class . . . ." Cutler v. Perales, 128 F.R.D. 39, 46 (S.D.N.Y. 1989). Plaintiffs contend, and this court agrees, that the Department's sorry history in complying with the broad injunction in Bundy,[1] along with evidence of pervasive toleration of harassment and retaliation since Bundy, argue for a class action as the most appropriate and efficient means of assuring broad relief.

---

[1] In Bundy, the D.C. Circuit offered the following guidance for the District Court to frame an appropriate injunctive decree on remand:

> [W]e believe that the Director [of the D.C. Department of Corrections] should be ordered to raise affirmatively the subject of sexual harassment with all his employees and inform all employees that sexual harassment violates Title VII of the Civil Rights Act of 1964, the Guidelines of the EEOC, the express orders of the Mayor of the District of Columbia, and the policy of the agency itself. The Director should also establish and publicize a scheme whereby harassed employees may complain to the Director immediately and confidentially. The Director should promptly take all necessary steps to investigate and correct any harassment, including warnings and appropriate discipline directed at the offending party, and should generally develop other means of preventing harassment within the agency.

Bundy, 641 F.2d at 947 (footnote omitted). This crystalline edict, juxtaposed against the Department's apparent behavior over the intervening 13 years, is most worrisome. If plaintiffs' allegations are even partially true, the agency in 1994 has committed statutory and constitutional violations no less egregious than in 1981 when Bundy was litigated. Under such circumstances, this court must take suitable steps to assure that Department of Corrections' employees can obtain meaningful relief.

If a class is to be certified, defendants maintain that it cannot be defined in terms that depend on the merits of the claim (for example, persons harassed or retaliated against). *See*, *e.g.*, Armstrong v. Chicago Park District, 117 F.R.D. 623, 627 (N.D. Ill. 1987), where the court found the proposed class to be self-defeating because of an inability to determine its members in advance of trial. Nonetheless, this court has certified classes whose members were defined by the unlawful practices to which they were subject. *See*, *e.g.*, Hartman v. Wick, 678 F. Supp. 312 (D.D.C. 1988). Definition of a class "by the contested practices of the defendant is sufficiently ascertainable." Lewis v. Tully, 96 F.R.D. 370, 376 (N.D. Ill. 1982). In fact, the conduct complained of is a benchmark uniquely suited to civil rights actions where the class members often cannot be specifically enumerated. Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972).

In examining the various class alternatives, the court will first review the criteria for certification -- numerosity, commonality, typicality and adequacy of representation -- established by Fed. R. Civ. P. 23(a) and 23(b)(2). Then, focusing on commonality and adequacy of representation, the court will contrast the "across-the-board" standard with the more recent "unity-of-interest" approach adopted in General Telephone Co. v. Falcon, 457 U.S. 147 (1982). The implications of Falcon extend to the desirability of bifurcating the liability and remedy phases of this litigation, and to the appropriateness of subclasses separating male and female employees, current and former employees,

supervisory and non-supervisory employees.  Lastly, the court will address peripheral issues, including the beginning date for the class period, tolling of the statute of limitations, and exhaustion of administrative remedies.

### III.  RULE 23

Federal Rule of Civil Procedure 23 governs class certification.  Rule 23(a) permits certification only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

Once a proposed class satisfies Rule 23(a), it then must show under Rule 23(b)(2) that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Each of these requirements will be addressed in turn.  First, however, the court will outline the relevant evidentiary standards and standard of review under Fed. R. Civ. P. 23.

### A. Evidentiary Standard and Standard of Review

Proponents of class certification -- plaintiffs in this instance -- bear the burden of evidentiary proof.  Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030 (5th Cir. 1981).  Here, plaintiffs rely upon anecdotal rather than statistical evidence in support of their motion for class certification.  Some courts have

found that anecdotal evidence is insufficient to justify certification because such evidence usually cannot bridge the gap between individual and class-wide claims. See, e.g., Sheehan v. Purolator, 839 F.2d 99, 103 (2d Cir.) (one affidavit insufficient to establish existence of class), crt. denied, 488 U.S. 891 (1988); Stastny v. Southern Bell Tel. & Tel. Co., 628 F.2d 267, 278-80, n.21 (4th Cir. 1980) (anecdotal evidence of discrimination at isolated facility not enough to prove existence of class across all facilities); Harris v. Marsh, 100 F.R.D. 315, 322 (E.D.N.C. 1983) (anecdotal evidence focusing on discrete occurrences insufficient to prove existence of class).

As this court observed in PEPCO, it would be inappropriate to adopt a rule categorically rejecting certification when supported solely by anecdotal evidence. In Re: PEPCO Employment Litigation, Civ. Action No. 86-0603, Memorandum Opinion at 21 (D.D.C. Dec. 4, 1992).

> The cases finding anecdotal evidence insufficient to justify certification have done so on the facts of the particular case at issue. Likewise, this court will reach its own conclusions based on the evidence at issue here. The court will review plaintiffs' anecdotal evidence and determine in the context of this case whether plaintiffs' evidence fails to bridge the gap between an individual and a class claim. If so, this court will follow the lead of the other cases on this subject and deny certification. If the anecdotal evidence does bridge that gap, this court will not hesitate to do the opposite.

Id.

Evidence that plaintiffs present here in support of class certification is the same evidence they will employ to prove the merits of their case at trial. The class certification inquiry

9

does not, however, extend to the merits. Nor is the court authorized to conduct a preliminary inquiry on the merits to justify class certification. Wagner v. Taylor, 836 F.2d 578, 587 (D.C. Cir. 1987). Because the present inquiry only extends to the validity of plaintiffs' proposed classes, the "court must modulate the intensity of its review of plaintiffs' evidence . . . ." PEPCO, at 23.

The legal standard is whether the evidence establishes a "reasonable basis for crediting [plaintiffs'] assertion[s]." Wagner, 836 F.2d at 587 n.57 (quoting Kuck v. Berkey Photo, Inc., 81 F.R.D. 736, 739 (S.D.N.Y. 1979)). A more extended probe of plaintiffs' evidence would be both unnecessary and ill-advised. Preliminary exploration is sufficient to determine the propriety of class certification. See Eisen v. Carlisle & Jacquilin, 417 U.S. 156, 178 (1974). Indeed, intensive scrutiny runs the risk of intruding upon the province of the jury. Id.

### B. Numerosity

The first requirement under Fed. R. Civ. P. 23(a) is numerosity -- a large number of potential plaintiffs who cannot be practicably joined. There is no numerical floor on class size; the court will examine each proposed class on its own facts. General Tel. Co. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 330 (1980). Generally, 40 members will satisfy the numerosity requirement. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.), cert. denied, 479 U.S. 883 (1986).

Plaintiffs note that there are about 1,500 women currently

10

employed by the Department of Corrections -- each of whom may have been affected by the allegations set forth in the complaint. In support, plaintiffs offer evidence that 90 complaints of sexual harassment were filed by employees against the Department during the five-and-a-half-year period ending January 1994. Still more complaints may have been lost or not reported. Director Ridley warned that there had been a notable increase in the number of sexual harassment claims; and he announced in a memorandum distributed throughout the Department in December 1988 that "we know that problems still persist."

The Department's own records indicate that at least 140 internal complaints of sexual harassment and/or retaliation were filed by female employees over the past six years. In addition, the class proposed by the plaintiffs could well include indirect as well as direct victims. <u>See</u>, <u>e.g.</u>, <u>Vinson v. Taylor</u>, 753 F.2d 141, 146 (D.C. Cir. 1985), <u>aff'd in relevant part and rev'd in part sub nom</u>, <u>Meritor Savings Bank, F.S.B. v. Vinson</u>, 477 U.S. 57 (1986). Those female employees who were not themselves an object of specific sexual harassment were nevertheless compelled to work in an atmosphere where such harassment was ubiquitous.

Pursuit of individual actions on behalf of each of these potential class members would assuredly be impracticable. Although the defendants assert that the numerosity requirement must be satisfied separately for each workplace environment, the evidence strongly suggests that remarkably parallel practices have been committed throughout the Department of Corrections. This

11

widespread similarity militates against requiring each organizational unit to meet separate numerosity hurdles. In short, plaintiffs have met their burden of proving numerosity.

<u>C. Commonality</u>

Rule 23(a)'s second requirement is commonality -- legal or factual issues common to the claims of all class members. Every member of the proposed class must have suffered from the same discriminatory employment practice. <u>Falcon</u>, 457 U.S. at 159 n.15. To satisfy Rule 23(a)'s commonality requirement, the proposed class must give evidence of discrimination that is manifested in employer practices affecting all class members.

It is not necessary that every issue of law or fact be the same for each class member. <u>Paxton v. Union Nat'l Bank</u>, 688 F.2d 552, 561 (8th Cir. 1982), <u>cert.</u> <u>denied</u>, 460 U.S. 1083 (1983). Factual variations among the class members will not defeat the commonality requirement as long as a single aspect or feature of the claim is common to all proposed class members. <u>See</u> <u>Pendleton v. Schlesinger</u>, 73 F.R.D. 506, 508 (D.D.C. 1977) <u>aff'd</u>, 628 F.2d 102 (D.C. Cir. 1980). Moreover, "[f]actual differences are not fatal if common questions of law exist." <u>Like v. Carter</u>, 448 F.2d 798, 802 (8th Cir. 1971), <u>cert.</u> <u>denied</u>, 405 U.S. 1045 (1972).

The mere fact that damage awards will ultimately require individualized fact determinations is not sufficient to deny certification. <u>McCarthy v. Kleindienst</u>, 741 F.2d 1406, 1415 (D.C. Cir. 1984). In <u>Holsey v. Armour & Co.</u>, 743 F.2d 199 (4th Cir. 1984), <u>cert.</u> <u>denied</u>, 470 U.S. 1028 (1985), the Fourth Circuit

affirmed class treatment of harassment and retaliation claims, specifically rejecting the employer's argument that the claims were too individualized:

> We cannot accept Armour's contention that harassment and retaliation claims are not susceptible of class treatment because they are too individualized. The plaintiffs established a general practice of retaliation against employees who opposed discriminatory practices or exercised rights protected under Title VII, in violation of § 704(a). Despite the presence of individual factual questions the commonality criterion of rule 23(a) is satisfied by the common questions of law presented. In this case, the utility of the class action device would be destroyed by requiring the plaintiffs to bring separate claims of retaliation.

Id. at 216-17 (citations omitted).

Plaintiffs' evidence affords a reasonable basis upon which to conclude that there are questions of both law and fact common to the proposed class. The challenged practices may have been committed under the supervision and with the approval of the Director of the Department. These practices appear to have been so pervasive as to reflect a custom or unwritten policy of sexual harassment and retaliation throughout the Department. An obvious common factual question is whether defendants knew of and tolerated a systemic policy of harassment and retaliation. And whether this policy violates Title VII or 42 U.S.C. § 1983 is a common question of law. See Harris v. General Dev. Corp., 127 F.R.D. 655, 661 (N.D. Ill. 1989). Plaintiffs have met their burden of proving commonality.

## D. Typicality

The third requirement under Rule 23(a) is typicality -- representatives of the class must have claims that are typical of

class members' claims.  Commonality and typicality are closely related; the former demands a showing that class members suffered injury resulting from a discriminatory employment practice; the latter requires that class representatives suffered a similar injury from the same impermissible practice.  Wagner, 836 F.2d at 591.  Commonality looks to the relationship among class members; typicality addresses the relationship between the members and their representatives.  In fact, three of the requirements under Rule 23(a) -- commonality, typicality and adequacy of representation -- each force the judge to consider whether claims of the class representatives are sufficiently similar to claims of the absentee members to fairly represent class interests.  Seen in this light, the three requirements assume constitutional proportion.  They embody a fundamental principle of due process: judicial procedure must fairly protect "the interest of absent parties who are to be bound by it."  Hansberry v. Lee, 311 U.S. 32, 42 (1940).

Factual variations between class representatives' claims and class members' claims do not negate typicality.  "[W]here the claims or defenses raised by the named parties are typical of those of the class, differences in the factual patterns underlying the claims or defenses of individual class members will not defeat the action."  United States v. Trucking Employers, Inc., 75 F.R.D. 682, 688 (D.D.C. 1977) (citations omitted).  Thus, it is not necessary that each of the named plaintiffs be subjected to all of the methods by which the defendants may have harassed or retaliated against employees.  All that is required is that the named

plaintiffs suffered from the general policy of harassment or retaliation alleged to be operative at the Department of Corrections.  See Falcon, 457 U.S. at 159 n.15.

In this case, the court is persuaded that plaintiffs have established a reasonable basis for their contention that claims of the class representatives are typical of claims of the class.  The named plaintiffs, collectively, have advanced claims in each area upon which the class complaint rests.  There is nothing about the nature of the representatives' claims, nor the circumstances surrounding them, that suggests they are particularized in applying only to the named plaintiffs.  The gravamen of the claims is widespread, covering males and females, supervisors and non-supervisors, current and former employees; and each of these subgroups are represented by one or more named plaintiffs.

### E. Adequacy of Representation

Rule 23(a)'s fourth requirement is that the class representatives fairly and adequately represent the class interests.  This has been interpreted to mean that interests of named plaintiffs in the litigation must not conflict with interests of other class members.  Wagner, 836 F.2d at 595-96.  Class representatives must be able "to vigorously prosecute the interests of the class through qualified counsel."  National Ass'n of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340, 345 (D.C. Cir. 1976), cert. denied, 431 U.S. 954 (1977).

Here, the class representatives have tenure at the Department of Corrections ranging up to 22 years and averaging over eight

years.  Plaintiffs contend, and defendants do not dispute, that the class representatives have demonstrated knowledge of the agency and its practices; they are well regarded by other members of the putative class.   There is no clear-cut evidence of substantive conflicts of interest between class members and their representatives.  Further, defendants do not dispute that counsel for the named plaintiffs have participated in more than 25 class actions, and possess the knowledge and skills necessary to adequately represent the class.

The Department does raise one potential for conflict of interest.   The argument goes like this:   First, the named plaintiffs may recover for quid pro quo harassment or retaliation even without the existence of a centralized policy.  See, e.g., Karibian v. Columbia University, 14 F.3d 773, 777 (2d Cir.) (quid pro quo harassment), cert. denied, 114 S. Ct. 2693 (1994); Volk v. Coler, 845 F.2d 1422, 1438 (7th Cir. 1988) (retaliation).  Second, the named plaintiffs may also recover for a hostile work environment if Departmental supervisors knew of it and failed to take remedial action, even without a centralized policy of toleration.  See, e.g., Turner v. Barr, 811 F. Supp. 1, 3 (D.D.C. 1993).  Ergo, the named plaintiffs may not have adequate incentive to represent their class in establishing that a centralized policy of harassment and retaliation existed.

Essentially, defendants' argument would deny class representative status to any plaintiff alleging particularized harms not dependent for their relief on an overriding Departmental

policy.  The perverse effect of such a proposition would be to
select as representatives those employees who had experienced the
least personal injury.  But this, in turn, would contravene Rule
23(a)'s  requirement  for  typicality.    Perhaps  this  is  the
underpinning for defendants' contention that class treatment is
incompatible  with  Title  VII  claims  seeking  remedies  extending
beyond declaratory and injunctive relief.

It is necessary for the court to examine this hypothesis in
some detail.  We shall do so in Part IV, _infra_, scrutinizing the
"unity-of-interest" mandate of <u>General Telephone Co. v. Falcon</u>, 457
U.S. 147 (1982).  First, a brief look at the final requirement for
class certification contained in Rule 23(b).

<u>F. Rule 23(b)</u>

Once the four requirements of Rule 23(a) are met, the court
must determine the type of class to be certified pursuant to Rule
23(b).   Plaintiffs  state  that  certification  under  subdivision
(b)(2) would be appropriate in this case.  Rule 23(b)(2) provides:

> (b) Class Actions Maintainable.  An action may be
> maintained  as  a  class  action  if  the  prerequisites  of
> subdivision (a) are satisfied, and in addition:
>
> .  .  .  .
>
> (2)  the  party  opposing  the  class  has  acted  or
> refused to act on grounds generally applicable to the
> class, thereby making appropriate final injunctive relief
> or corresponding declaratory relief with respect to the
> class as a whole . . . .

The Advisory Committee Notes to the 1966 Amendment indicate
that Rule 23(b)(2) is intended for civil rights cases "where a
party is charged with discriminating unlawfully against a class,

usually one whose members are incapable of specific enumeration."
The mere fact that plaintiffs seek damages in addition to
declaratory and injunctive relief does not preclude certification
under Rule 23(b)(2). "Despite the explicit reference to injunctive
relief, courts have held that section 1981 and Title VII actions
seeking monetary damages in addition to injunctive relief, such as
this case, are appropriately brought under subdivision (b)(2)."
Harris v. General Dev. Corp., 127 F.R.D. at 663-64. "The
subdivision does not extend to cases in which the appropriate final
relief relates exclusively or predominantly to money damages."
Fed. R. Civ. P. 23(b)(2), advisory committee's note to 1966
amendment (emphasis added).

In the context of Title VII litigation, a finding that the
proposed class qualifies under Rule 23(a) effectively assures
certification; Rule 23(b) requirements have posed no obstacle in
practice. Note, Certifying Classes and Subclasses in Title VII
Suits, 99 Harv. L. Rev. 619, 622 n.23 (1986) [hereinafter
Certifying Classes]. Most courts have certified under subdivision
(b)(2), thus avoiding the need for individual pretrial notice to
all members of the class, along with a provision allowing absentee
members to opt out of the action in accordance with Rule 23(c)(2).
Id. (citations omitted).

Defendants maintain that plaintiffs have not specified in what
way the Department of Corrections has "acted or refused to act on
grounds generally applicable to the class," as commanded by Rule
23(b)(2). The court does not agree. Plaintiffs have pointed to

practices which, if proven, constitute a pervasive Departmental policy of harassment and retaliation.  The highest officials, in policy-making roles, seem to have been aware of these practices. Some of these officials have themselves faced charges of harassment or retaliation.  Infractions have gone unpunished, notwithstanding repeated complaints, litigation, even court order.

An allegation that defendants maintain a continuing policy and practice of denying women equal employment opportunities is sufficient to satisfy the Rule 23(b)(2) requirement; plaintiffs have shown that the party opposing the class has acted or refused to act on grounds generally applicable to the class.  See, e.g., Resnick v. American Dental Ass'n, 90 F.R.D. 530 (N.D. Ill. 1981); Beeman v. Middendorf, 425 F. Supp. 713 (D.D.C. 1977); Marimont v. Mathews, 422 F. Supp. 32 (D.D.C. 1976).

## IV.  UNITY OF INTERESTS

The landscape for class certification in Title VII litigation was altered in 1982 with the Supreme Court's opinion in General Telephone Co. v. Falcon, 457 U.S. 147 (1982).  Until then, the prevailing view had been the so-called "across-the-board" rule. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969).  This rule permitted a single Title VII plaintiff to represent all members of a racial, religious, gender or national group who had allegedly been harmed by an employer's discriminatory practices.  The class could include supervisors and non-supervisors.  See, e.g., IMPACT v. Firestone, 24 Fair Empl. Prac.

Cas. (BNA) 572, 575-76 (N.D. Fla. 1980). It could include a mixture of current and former employees. See e.g., Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247-48 (3d Cir.), cert. denied, 421 U.S. 1011 (1975). As long as all of the class members belonged to the same racial, religious, gender or national group, the class satisfied the commonality, typicality and adequacy-of-representation criteria of Rule 23(a). Certifying Classes, at 621. Factual variations in the employment experiences and discrimination claims between the named plaintiff and the absentee members appeared insignificant. Id.

A minority of courts applied Rule 23(a) in far stricter fashion, arguing that absentee interests could only be protected if they coincided with interests of the named plaintiff. See, e.g., Harriss v. Pan Am. World Airways, 74 F.R.D. 24, 38, 41-45 (N.D. Cal. 1977). These courts denied motions to certify across-the-board classes. They barred current and former employees from representing each other. See, e.g., Hyatt v. United Aircraft Corp., 50 F.R.D. 242, 245-46 (D. Conn. 1970). And they barred plaintiffs from bringing suits that stretched across occupational lines. See, e.g., Richardson v. Coopers & Lybrand, 82 F.R.D. 335, 338 (D.D.C. 1978).

### A. General Telephone Co. v. Falcon

The Supreme Court in Falcon lent support to this minority approach. It refused to allow certification of a class where an employee sought to represent both employees and applicants, even though all putative class members were of the same national origin.

Falcon, 457 U.S. at 158-59.  Because of the binding effect of class litigation and the attendant need to protect absentee interests, the Court required a unity of interests within the class; the class representative must possess the same interest and suffer the same injury as the class members.  Id. at 156.

In response to Falcon, many federal courts applied a strict unity-of-interest approach to Title VII class certifications.  See, e.g., Minority Police Officers Ass'n v. City of South Bend, 555 F. Supp. 921, 924-25 (N.D. Ind.) (current employee cannot represent former employee), aff'd in part and appeal dismissed in part, 721 F.2d 197 (7th Cir. 1983); Eastland v. Tennessee Valley Auth., 704 F.2d 613, 617-18 (11th Cir. 1983) (non-managerial employee cannot represent managerial staff), cert. denied, 104 S. Ct. 1415 (1984). When faced with a heterogeneous class, courts redefined the class to exclude divergent interests.  Id.  Occasionally, the redefined class was certified, albeit with fewer members.  See, e.g., Castillo v. City of Phoenix, 33 Fair Empl. Prac. Cas. (BNA) 1597, 1599-601 (D. Ariz. 1983).  Sometimes the redefinition ran afoul of Rule 23(a)'s numerosity requirement, thus barring certification. See, e.g., Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

However, the Falcon court left an escape hatch.  It accepted "the proposition underlying the across-the-board rule -- that racial discrimination is by definition class discrimination."  457 U.S. at 157.  The Court acknowledged that broad class actions are sometimes permissible in Title VII cases: "Significant proof that

an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion." Id. at 159 n.15.

Courts have found the conditions of Falcon footnote 15 satisfied in a variety of situations -- several of which are pertinent to this litigation. Some courts have certified broad classes upon finding that a single set of employment practices commonly affected a diverse set of individuals. See, e.g., Richardson v. Byrd, 709 F.2d 1016, 1020 (5th Cir.) (job assignment policy affected both employees and applicants), cert. denied, 464 U.S. 1009 (1983); Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608, 616-17 (5th Cir. 1983) (retirement system affected both custodial and clerical workers). Other courts have concluded that "subjective decision-making" infected a company's employment practices and justified a broadly defined class. See, e.g., Brown v. Eckerd Drugs, Inc., 564 F. Supp. 1440, 1446 (W.D.N.C. 1983); Johnson v. Montgomery County Sheriff's Dep't, 99 F.R.D. 562, 566 (M.D. Ala. 1983). Most importantly for our purposes, a few courts have certified broad class actions when presented with statistical or anecdotal proof that "discrimination pervade[d]" the company. See, e.g., Meyer v. Macmillan Publishing Co., 95 F.R.D. 411, 415 (S.D.N.Y. 1982) (class included applicants, deterred applicants, current and former employees); Jackson v. Fort Worth Nat'l Bank, 33 Fair Empl. Prac. Cas. (BNA) 1317, 1322-24 (N.D. Tex. 1983).

This court is disposed toward liberal interpretation of Falcon

22

footnote 15.    First, there are the egregious and enormously troubling allegations of rampant harassment and retaliation at the Department of Corrections -- clearly qualifying as a "general policy of discrimination" in the context of footnote 15.    Second, Title VII of the Civil Rights Act of 1964 granted courts broad discretion to award affirmative relief in private suits.    42 U.S.C. § 2000e-5(g).    Congress intended for private litigation to serve as the primary means of enforcement.    Indeed, the legislative history of the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103 (codified as amended at 42 U.S.C. §§ 2000e-2000e-17), explicitly endorses Title VII class actions.    "[T]itle VII actions are by their very nature class complains [sic], and . . . any restriction on such actions would greatly undermine the effectiveness of title VII."    S. Rep. No. 415, 92nd Cong., 1st Sess. 27 (1971) (footnote omitted).

### B. Bifurcation

A third reason for expansive treatment of <u>Falcon</u> footnote 15 is that a mechanism exists by which potential disunities of interest -- the principal concern of <u>Falcon</u> -- can be mitigated. The court has the power to bifurcate the liability and remedy phases of the litigation.    "When appropriate . . . an action may be brought or maintained as a class action with respect to particular issues . . . ."    Fed. R. Civ. P. 23(c)(4).    Under this subdivision of Rule 23, the court can confine the class action aspects of the litigation to those issues pertaining to liability, then try the remedial issues separately.    That is what the court shall do in

this case.

In <u>Bishop v. New York City Dept. of Housing Preservation & Dev.</u>, 141 F.R.D. 229 (S.D.N.Y. 1992), the court remarked that if the class was successful on the liability issue, "numerous individual questions relating to damages and relief will remain." <u>Id.</u> at 237.  In fact, "[w]hile a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily necessary to determine the scope of individual relief for members of the class." <u>Id.</u> at 237-38 (quoting <u>Cooper v. Federal Reserve Bank</u>, 467 U.S. 867, 876 (1984)).  This same bifurcation of issues was employed by the Supreme Court in <u>Int'l Brotherhood of Teamsters v. United States</u>, 431 U.S. 324 (1977).  Subsequent to a class action on the issue of Title VII liability, the Court ordered evidentiary hearings to determine both the number of identifiable victims and the extent of necessary relief for each victim.  <u>Id.</u> at 376.

Plaintiffs' proposed class includes male and female employees, current and former employees, supervisory and non-supervisory employees.  One or more representatives of each of these subgroups are included among the named plaintiffs.  Complicating the problems introduced by such a diversity of interests, the plaintiffs have requested broad relief including back pay, compensatory damages, restoration of job benefits, injunctive and declaratory remedies, and an affirmative action program.  Were it not for bifurcation of the remedial issues, the potential for conflict between the class representatives and absentee members would be considerable.  A few

of the more obvious conflicts are noted below.

### C. Potential Conflicts of Interest

The class defined by the plaintiffs includes female employees subjected to harassment, along with both male and female employees who were retaliated against for filing or supporting harassment claims. However, the Fifth Circuit held that female plaintiffs could not adequately represent the interests of males in an employment discrimination suit where the females sought to establish that males were favored at their expense. Payne v. Travenol Laboratories, Inc., 673 F.2d 798 (5th Cir.), cert. denied, 459 U.S. 1038 (1982). The female plaintiffs in Payne asserted that their employer typically assigned them to the lower-paying job of assembler while assigning males to higher-paying material handler classifications. Id. at 810.

Certification of a class comprising both minority and non-minority firefighters was rejected in Germann v. Kipp, 429 F. Supp. 1323 (W.D. Mo. 1977), vacated on other grounds, 572 F.2d 1258 (8th Cir. 1978). Fire department employees alleged reverse discrimination and sought to enjoin certain promotions under the department's affirmative action program. Id. Analogously, male class members at the Department of Corrections might be diametrically opposed to the implementation of a broad affirmative action program for the benefit of all female employees.

For that reason, the court qualifies its certification of plaintiffs' class in the following manner: To the extent that plaintiffs seek relief in the form of a broad affirmative action

program benefiting all female employees, such relief may not be obtained in this lawsuit. Plaintiffs' class is certified to seek affirmative action relief only for those employees affected by defendants' alleged policy of sexual harassment and retaliation. Evidentiary issues regarding the nature and extent of possible effects will be confronted in the remedial phase of the litigation.

A second possible conflict, identified by the defendants, could arise between supervisory and non-supervisory personnel. The District of Columbia Circuit concluded that existence of a supervisory relationship between class members could undermine the adequacy of representation. Wagner, 836 F.2d at 595. This court, in PEPCO, at 53, found that supervisory relationships presented enough of a conflict to prevent certification. The court was wary of any class members potentially antagonistic to one another. Plaintiffs' promise that only a few conflicts existed did not cure the problem. Id.

Here, at least two of the named plaintiffs (Vera Brummell and Bessye Neal) are supervisory employees. Defendants argue that the underlying claim common to the class is for injunctive relief from an alleged departmental policy that tolerates sexual harassment and retaliation. Thus, the class must logically exclude supervisory employees; it would be anomalous to include among the plaintiffs persons at whom an injunction might be directed. But defendants' argument is unconvincing. Plaintiffs ask for back pay and compensatory damages in addition to injunctive relief. At the remedial stage of this proceeding, supervisors and non-supervisors

26

alike will be able to come forward with evidence of their specific injuries and appropriate relief. Furthermore, an injunction against a few supervisory members of the class -- who most likely did not exert significant influence over departmental policy-making -- is fairly characterized as de minimis relative to the value of such an injunction in protecting these same supervisors from epidemic discrimination.

Restoration of job benefits, also sought by the plaintiffs, could conceivably reward non-supervisors at the expense of their superiors. There is nothing in the record to indicate whether supervisors might be aggrieved if their subordinates are awarded promotions as a consequence of this litigation. But the battle for promotions is one waged just as fiercely between employees on the same level as between supervisors and non-supervisors. The court finds no coherent rationale to exclude supervisors from the plaintiff class merely because some non-supervisors might be upgraded.

A third potential conflict arises between current and former employees. Whereas a former employee might focus on the defendants' discharge policies, a current employee would likely have greater concern over promotions and transfers. Former employees will primarily seek monetary compensation, while current employees probably desire injunctive relief as well. Certain back pay formulas may even benefit current employees over former employees, or vice versa.

Courts have been inconsistent in their treatment of the

current-versus-former employee conflict.  For example, former employees were allowed to represent both present and former female technical employees in a sex discrimination suit.  <u>Wetzel</u>, 508 F.2d at 239.  And present employees were not regarded as having interests intolerably antagonistic to applicant members of the putative class in a Title VII action.  <u>Gilchrist v. Bolger</u>, 89 F.R.D. 402 (S.D. Ga. 1981), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, <u>vacated</u> <u>in</u> <u>part</u> <u>and</u> <u>remanded</u>, 733 F.2d 1551 (11th Cir. 1984).  On the other hand, the estate of a deceased employment discrimination complainant could not be substituted as an adequate representative of a class seeking both injunctive and monetary relief; the estate, concerned primarily with damages, had no direct interest in correcting the alleged unlawful employment practices.  <u>Mixon v. Gray Drug Stores, Inc.</u>, 81 F.R.D. 413 (N.D. Ohio 1978).

There is still another aspect of this case that relates to the time period of employment.  The 1991 amendments to the Civil Rights Act, Pub. L. No. 102-166, 105 Stat. 1071 (1991), specified they will take effect on the date of enactment.  It is unclear precisely how this retroactivity provision should be interpreted.  Do the amendments apply to cases filed after enactment but pertaining to employment practices that occurred before enactment?  To cases filed before enactment but not yet decided?  Because the 1991 Act includes, among other provisions, the availability of jury trial and compensatory damages, it has particular relevance to this lawsuit.  Moreover, since at least one of the named plaintiffs filed her claim before enactment of the 1991 Act (i.e., Sharon

Bonds' complaint was originally filed on January 26, 1990), an obvious friction exists between those plaintiffs who will ardently pursue retroactivity and those who have little vested interest in that controversy.

These potential differences are diminished -- perhaps eliminated -- with the bifurcation of the litigation into liability and remedial phases. There are no disabling conflicts between supervisors and non-supervisors, or between current and former employees, or between pre- and post-1991-Act claims, with respect to establishing that the Department of Corrections is liable for sexual harassment and retaliation. Some claims, ultimately, may not be entitled to monetary relief; some may not be able to invoke the 1991 Act provisions; but all of the class members, in order to proceed to the remedial part of the trial, will in tandem seek to prove that the Department was culpable.

### D. Subclasses

A different approach to resolve potential conflicts between class representatives and absentee members is to certify subclasses. Fed. R. Civ. P. 23(c)(4) provides that "[w]hen appropriate . . . a class may be divided into subclasses and each subclass treated as a class." A court that uses subclasses embraces individuals with divergent interests; by comparison, a rigorous application of the unity-of-interest approach could exclude some of the same individuals. Subclassification also differs from across-the-board certification; subclasses respond to, rather than disregard, the panoply of interests within a large

class.

Current and former employees, for example, might be categorized in different subclasses. Their substantive claims and remedial objectives may be sufficiently dissimilar to raise doubts about common representation. The subclassification scheme may also be appropriate for supervisory and non-supervisory employees, or for male and female employees. Each of these possible categorizations is treated at some length above. As explained, the principal reason for rejecting subclasses in this case is that they are not necessary. The employees in question are subject to the same practices and procedures; they are governed by the same rules and standards, established pursuant to a centralized policy that arguably condones or tolerates sexual harassment and retaliation.

By avoiding subclasses, the court can also bypass some of the problems that subclasses create. The court need not identify representative parties for each subclass. Nor is the court faced with determining whether separate counsel for each subclass is necessary or desirable. Finally, if dictated by changed circumstances or new information, the court has discretion to alter any part of its certification order during the course of this action. Fed. R. Civ. P. 23(c)(1). Reconsideration of the subclassification alternative may be appropriate for the relief stage of the litigation. Reconsideration is permissible at any time prior to judgment on the merits. Id.

## V.  OTHER ISSUES

### A. Starting Date of the Class Period

Plaintiffs urge a starting date of April 1, 1989 for sexual harassment claims, and April 4, 1991 for retaliation claims. These dates are 300 days prior to the earliest charges filed by any of the named plaintiffs -- i.e., Sharon Bonds' harassment complaint is dated January 26, 1990, and Bessye Neal's retaliation complaint was filed January 29, 1992.

Defendants maintain that no opening date is necessary, because a claim for prospective relief is the only basis for class certification. The asserted class wrong is toleration of a centralized policy of harassment and retaliation. That without more, argue defendants, cannot countenance recovery. A discriminatory policy "in the air" does not entitle one to recovery. Sangster v. United Air Lines, Inc., 438 F. Supp. 1221, 1227 (N.D. Cal. 1977), aff'd, 633 F.2d 864 (9th Cir. 1980), cert. denied, 451 U.S. 971 (1981). The court has already rejected this line of argument. Briefly, the plaintiffs do not limit their recovery to injunctive relief; they seek, in addition, back pay and compensatory damages. At the second phase of the lawsuit, where the court will address specific remedies, class members can attempt to demonstrate that they were specifically injured. Clearly, it will be necessary to establish a starting date for such demonstrations.

Defendants also contend that the charges relied upon to set opening dates failed to put the Department of Corrections on notice

31

that a class claim existed.  Yet <u>Hartman v. Wick</u> holds otherwise.

> [A]n administrative complaint need not specify that it
> contains class allegations.  The law clearly holds that
> a federal employee puts the agency on notice that it may
> be subject to a class-wide claim of discrimination when
> he   or   she   files   an   administrative   charge   of
> discrimination, even if the charge purports to be filed
> only on the signatory's behalf.

<u>Hartman</u>, 678 F. Supp. at 326 (citations omitted).

The time limit for filing charges with a state or local agency is 300 days after the alleged unlawful employment practice occurs. 42 U.S.C. § 2000e-5(e).  Therefore, it is reasonable to validate a starting date for the class period 300 days prior to the earliest harassment and retaliation claims filed by any of the named plaintiffs.

### B. Exhaustion of Administrative Remedies

Plaintiffs rely upon <u>Laffey v. Northwest Airlines, Inc.</u>, 567 F.2d 429, 472 (D.C. Cir. 1976), <u>cert.</u> <u>denied</u>, 434 U.S. 1086 (1978), for the proposition that the statute of limitations is tolled and the administrative filing requirement is satisfied with the first claim challenging sexual harassment or retaliation.  Defendants believe such reliance is misplaced.  They assert that the Title VII class (although not the § 1983 class) should be limited to those employees who have filed charges with the Equal Employment Opportunities Commission, or appropriate state agency.

Lower court decisions instituting the tolling doctrine held that "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC." <u>Oatis v. Crown Zellerbach Corp.</u>, 398

F.2d 496, 498 (5th Cir. 1968).  Defendants respond that courts at
the time were addressing challenges to discriminatory pension
plans, hiring and promotion practices, and the like.  The pertinent
circumstances were the same with respect to each individual and the
relief varied only in quantum based on objective criteria.  But the
circumstances in quid pro quo and retaliation cases are highly
fact-specific, varying greatly from complaint to complaint.

Plaintiffs reply that many later authorities permit
certification of classes whose only members to exhaust
administrative remedies are the class representatives.  See, e.g.,
Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 n.8 (1975).  In
Albemarle, the Supreme Court observed that Title VII was reenacted
after lower courts had allowed absent class members to rely upon
the exhaustion process of their class agents.  Id.  Congress thus
had the opportunity to revise the statute, but chose not to do so.
Arguably, Congress thereby accepted the judicially-implemented
doctrine.

When a private Title VII employment discrimination suit is
given class status, members of the class may participate and obtain
relief even though they have not personally filed charges with the
EEOC, and even if the named plaintiff loses interest in the case or
turns out not to be entitled to relief.  E.E.O.C. v. Contour Chair
Lounge Co., 596 F.2d 809 (8th Cir. 1979).  See also, Shehadeh v.
Chesapeake & Potomac Tel. Co. of Maryland, 595 F.2d 711, 717 n.19
(D.C. Cir. 1978); Dodge v. Giant Food, Inc., 488 F.2d 1333 (D.C.
Cir. 1973).  It is not necessary for all class members to have

fully exhausted administrative remedies; it will suffice if the representative plaintiffs have exhausted. Jackson v. Harris, 86 F.R.D. 452 (N.D. Ind. 1980). See also, Beeman, 425 F. Supp. at 713.

The weight of authority supports plaintiffs' contention that the administrative filings requirement for class members has been satisfied by prior claims of the class representatives.

### VI.  CONCLUSION

The class action is intended to save resources; both the courts and the parties are able to litigate, in an economical manner, issues with potential impact on a broad number of individuals. Falcon, 457 U.S. at 155. Class status is well-suited to civil rights litigation, and in particular to suits brought under Title VII. Wagner, 836 F.2d at 590 n.75. "Congress was well aware of the need for, and strongly supported the use of, class actions to rectify systematic employment discrimination." Id.

For the reasons more fully set forth above, the court grants plaintiffs' motion for certification and adopts the following two-part class definition: (a) All current and former female employees who have been employed by the Department of Corrections between April 1, 1989 and date of trial, and who were adversely affected by the practices of sexual harassment. (b) All current and former male and female employees who have been employed by the Department between April 4, 1991 and date of trial, and who have suffered retaliation for opposing such unlawful employment practices.

34

The court further orders that this litigation be bifurcated into separate liability and remedial phases. Relief in the form of an affirmative action program will only be available to those employees actually affected by defendants' alleged policy of sexual harassment and retaliation.

A separate order shall issue this date.

Royce C. Lamberth
United States District Judge

DATE: 12-23-94

35